A. L. HOUGHTON & COMPANY v. AMMI B. TODD ET AL.

FILED MARCH 22, 1899. No. 8813.

1. **Agency: KNOWLEDGE OF AGENT: FRAUD.** The rule whereby an agent's knowledge is imputed to his principal is subject to an exception in the case of an agent who is engaged in an independent fraudulent scheme without the scope of the agency.

2. **Sales: SURETYSHIP.** Contract set out in the opinion construed as one of sale and not of suretyship.

3. **Authority of Agent: QUESTION FOR JURY.** Evidence *held* to present a case for the jury, on the theory of an agent's implied or apparent authority.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Reversed.*

*John S. Bishop,* for plaintiffs in error.

*Byron Clark* and *C. A. Rawls, contra.*

IRVINE, C.

About January 30, 1894, a partnership was formed by Ammi B. Todd, James W. Sage, and Charles D. Dundas under the name of the Lincoln Bridge Company, its main

purpose being the construction of bridges. The agree-ment provided, among other things, that no material should be purchased or debts contracted without the con-sent of all the partners. Sage was, however, soon taken ill and the business was in fact conducted by Todd and Dundas. About the same time Dundas entered into a contract with the plaintiffs Houghton & Co., dealers in lumber, with an office in Kansas City and mills in Arkan-sas, whereby Dundas was to sell lumber for the plain-tiffs, receiving as a commission the excess of prices ob-tained above fixed prices given him by the plaintiffs. This contract and the articles of partnership of the bridge company bear the same date, January 30. Janu-ary 31 Dundas sent plaintiffs an order for five cars of lum-ber, suitable for the construction of bridges, and to be shipped to the county board of Lancaster county. The plaintiffs declined to accept this order. February 7 a letter was written to them as follows:

"You may send us the bills of the five cars of lumber for Lancaster county and we will pay the bills at the end of sixty days. Reference: German Nat. Bank of this city.

"Yours respectfully,     THE LINCOLN BRIDGE CO.

"By C. D. DUNDAS, *Sec.*"

Dundas, the same day and under the letter-head of the bridge company, but signing this time individually, wrote plaintiffs: "The Lincoln Bridge Company will see to paying the bills as they come due for the five cars for Lancaster county. You had better ship them to the Lincoln Bridge Company and they can bill them to the county." This proposition was accepted. Plaintiffs shipped the lumber by boat and rail to Lincoln, con-signed to the bridge company. It was apparently re-ceived by the bridge company, but in fact Dundas signed, or caused to be signed, the name of that concern to the receipts. The lumber was turned over to the county, claims were filed by Dundas on behalf of the bridge com-pany, warrants were issued to the company, but deliv-

ered to Dundas, who indorsed the company's name and sold them. It seems that he sent a portion of the proceeds to plaintiffs and retained the rest. The bridge company at any rate did not receive it. The plaintiffs brought this suit to recover the unpaid purchase price. Dundas died soon after, and the case has proceeded against the surviving partners. Dundas had no authority to make the purchase, but had an individual contract with the county to furnish it with bridge lumber.

The district court directed a verdict for the defendants, holding that the contract was one of suretyship, that it was beyond the scope of Dundas' authority as a partner to bind the partnership by such a contract, and that, as he was plaintiffs' agent, the plaintiffs were charged with his knowledge of his own want of authority. We think it was error to direct a verdict. It is clear that Dundas was without authority to make the contract, whether it was one of sale or of suretyship, but there was sufficient evidence to go to the jury on the theory of apparent authority. True, Dundas was the agent of the plaintiffs, and, as a general rule, the knowledge of the agent is imputed to the principal. An exception to the rule is that where the agent is engaged in an independent fraudulent scheme for his own benefit, his knowledge will not be imputed to his innocent principal. (*Allen v. South Boston R. Co.*, 150 Mass. 200; *Thomson-Houston Electric Co. v. Capitol Electric Co.*, 65 Fed. Rep. 341; *Kennedy v. Green*, 3 Myl. & K. [Eng.] 699; *First Nat. Bank of Davenport v. Gifford*, 47 Ia. 575.) Many other cases might be cited, but the authorities are practically uniform in favor of the exception, generally stating it even more broadly. Now it is clear that Dundas was engaged in such a scheme, and was seeking to use the credit of the bridge company to make a sale which he had failed to make otherwise, the device being to defraud either the plaintiffs or his partners, and for his own benefit. The case falls within the exception, and plaintiffs' situation is to be determined by their actual notice and not by notice im-

puted from Dundas' knowledge.   The district judge was
in error when he construed the contract as one of surety-
ship.   Plaintiffs had refused to sell to the county, where-
upon the proposal was made, not that the bridge com-
pany would guaranty payment, but that the lumber
should be shipped to it and it would pay.   The arrange-
ment entailed no privity whatever between plaintiffs and
the county, the county was not obligated to plaintiffs,
and the undertaking was absolute—one of sale.

It is contended that plaintiffs had actual notice of Dun-
das' want of authority.   They did not know of the limi-
tation in the articles, but it is said that the letter-heads
conveyed equivalent information, because they bore the
words, after the name of the company, "Construction of
Bridges and Other Contract Work."   We do not find
these words on any of the letter-heads of letters bearing
directly on the contract; but if such words were there,
it would not be controlling.   The construction of bridges
is a business which may involve the purchasing of ma-
terials for such construction.   If not it must be because
of some particular custom of that business which there
was no evidence to establish.   From all the facts stated
it would certainly be reasonable for the plaintiffs to infer
that the bridge company was to construct bridges for the
county, and that as the county had failed to buy the
material, it had been arranged for the contractors to sup-
ply it.   This would seem to be within the scope of the
business and within the apparent authority of a partner,
especially one described on the same letter-heads as "Sec-
retary and Contracting Engineer."

We have not stated all the evidence, and mean to ex-
press no opinion whether the view indicated is that
which should of necessity or propriety be accepted on a
consideration of the whole case.   What we hold is that
the facts we have stated are sufficient to entitle the plain-
tiffs at least to go to the jury on the theory of apparent
authority.

REVERSED AND REMANDED.