## WALMSLEY v. QUIGLEY.

### (Circuit Court of Appeals, Eighth Circuit. April 28, 1904.)

### No. 1,834.

1. AGENT'S AUTHORITY—EVIDENCE—DECLARATIONS OF AGENT.
   The admissions or declarations of an alleged agent are alike incompetent to prove his authority or the extent of his powers.   ·
(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

Charles J. Hughes, Jr., and Bret Harris, for plaintiff in error.

E. T. Wells, John Charles Thompson, John H. Chiles, and George S. Redd, for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge. The defendant in error, Edward D. Quigley, brought an action in the Circuit Court against Sylvester Pierce Walmsley to recover a commission of $2,500, which he alleged was due to him for his services in procuring a purchaser for certain real estate, which, for the sake of brevity, will be called the "Dove's Nest Property." For his cause of action he alleged in his complaint that these facts existed: On April 1, 1901, Robert S. Morrison held the title to the real estate as a trustee for Walmsley and others whose names were unknown to him. M. C. Merrill told him that he desired to purchase this property. Thereupon he applied to Morrison for authority to sell the property to Merrill, and Morrison, "by authority of said defendant and the others equitably interested in said premises, and for whose use and· behoof the said Morrison was holding the same," agreed with him that he should procure Merrill or some other person to buy the property for $25,000, and that he should receive as his commission for the negotiation and for procuring the purchaser $2,500. Afterwards he persuaded Merrill to visit and examine the property, and, while Merrill had the purchase under consideration, Morrison, by the direction and request of the defendant and others equitably interested in the property, conveyed it to Walmsley as trustee for those entitled to its benefit. At some subsequent time Merrill continued the negotiations for the purchase which had been instituted by the plaintiff, and finally, on December 24, 1901, bought the property for $25,000. The defendant, Walmsley, admitted in his answer that Morrison held the naked legal title to the real estate on April 1, 1901, in trust for the defendant and others who were the equitable owners thereof, that Morrison subsequently conveyed this title to him, and that he sold the property to Merrill in the autumn of the year 1901 through an agent named Owen, to whom he paid a commission of $2,500 for effecting the sale. He denied that Morrison ever had any beneficial interest in the property, that he ever had any right or

¶ 1. See Principal and Agent, vol. 40, Cent. Dig. § 416.

authority to sell the land, to offer it for sale, or to authorize any other person to do so. He denied that Morrison ever had any power or authority from him or from any of the other persons equitably interested in the property to make the alleged agreement to pay to the plaintiff a commission of $2,500 for procuring a purchaser of the property, and denied that Morrison ever made any such agreement. He denied that Merrill continued any negotiation instituted by Quigley at the time when he finally purchased the property through Owen.

Under these pleadings, and with the alleged authority of Morrison to agree on behalf of the defendant, Walmsley, and the other equitable owners of the property, to pay to the plaintiff a commission of $2,500 for procuring a purchaser of the property for the sum of $25,000, squarely in issue, the case came to trial. A jury was waived, and the trial was conducted before the court. The plaintiff introduced in evidence a sheriff's deed of the land in question to Morrison, dated September 16, 1898, and the certificate of its record upon September 26, 1898. The plaintiff, Quigley, was then called as a witness, and he testified that in February, 1901, Merrill wanted him to look up the Dove's Nest property, learn who owned it and what it could be purchased for, and told him that he wanted to buy it; that he proceeded to investigate the title, and found that the property stood in the name of Morrison; that he thereupon called upon Morrison, and the latter asked him to make a proposition which he could submit to some co-owners; that he made a proposition to pay $25,000 for the property —$5,000 cash, and $5,000 every 90 days thereafter until the full price was paid; that Morrison told him that he would have to wait until he heard from New Orleans parties who were interested in the property before he could give him any answer to his proposition; that he waited two weeks, and that Morrison then said that he could not give a definite answer because some of the owners, Mr. Walmsley or their attorney, were in New York; that at the end of three or four weeks Morrison told him that they had accepted the proposition, and that he could go on with the sale; that he then put Morrison in communication with Merrill, and informed the latter that they had agreed to the proposition, and that he could go on and close the deal at any time. The foregoing is all the material testimony that had been presented in the case when counsel for the plaintiff asked Quigley what the terms of the agreement were with reference to commission, defendant's counsel objected to the question upon the ground that no relationship between the plaintiff and the defendant had been shown which would justify proof of commission, this objection was overruled, the plaintiff excepted, and the witness answered that they were to pay him 10 per cent. of the purchase price. The ruling of the court which admitted this evidence is the first specification of error assigned.

This is an action to recover $2,500 of the defendant, Walmsley, as an individual, and not as a trustee, and the judgment which has been rendered against him is a personal judgment. The cause of action rests upon the averment that Morrison, by authority of Walmsley, agreed to pay the plaintiff 10 per cent. of the purchase price of the property for his services in procuring a purchaser for it. Proof of the authority of Morrison to make this agreement on behalf of Walmsley

was clearly an indispensable prerequisite to the competency of evidence of the agreement. No such proof had been presented. The testimony of Quigley that Morrison had told him that "they" had accepted his proposition, even if it be conceded that Walmsley was one of the "they," was both insufficient and incompetent to establish the authority of Morrison to bind Walmsley by such a contract. The admissions and declarations of an alleged agent are alike incompetent to establish his authority or the extent of his powers. Union Guaranty & Trust Co. v. Robinson, 24 C. C. A. 650, 653, 79 Fed. 420, 422; Whitam v. Dubuque & S. C. R. Co. (Iowa) 65 N. W. 403, 405; Bacon v. Johnson (Mich.) 22 N. W. 276, 277. The Circuit Court should have sustained the objection to evidence of the agreement to pay the commission until the plaintiff had established the fact by competent proof that Walmsley had authorized Morrison to make such a contract on his behalf. There was no evidence of any such authority before the court at the time this ruling was made. Moreover, a careful perusal of the entire record has produced a settled conviction in our minds that there was no evidence at any time during the trial that the defendant ever gave Morrison any such authority or that he ever ratified any such contract. The result is that proof of the agreement of Walmsley to pay the commission was not only incompetent at the time it was offered, but it never became competent at any time during the trial of the action, and the error in receiving it was crucial and fatal to the plaintiff's recovery, so that it becomes unnecessary to consider any other question presented in this case.

The judgment below must therefore be reversed, and the case must be remanded to the Circuit Court with directions to grant a new trial. It is so ordered.