## ATLAS LAND CO. v. HENDRIKS. *

(Circuit Court of Appeals, Eighth Circuit. April 28, 1924.)

No. 6437.

1. **Principal and agent 156—Grantor not liable for fraud of grantee in sale of land to another.**

Grantor of land was not liable for fraudulent representation of grantee in sale of land to another, unless grantee was acting as his agent.

2. **Principal and agent 22(1)—Declarations of alleged agent incompetent to prove agency.**

Declarations of alleged agents are incompetent to prove agency.

3. **Principal and agent 23(5)—Evidence held insufficient to sustain finding of agency of grantor for his grantor.**

In action to cancel contract for purchase of land and mortgage, for fraudulent representations, evidence *held* insufficient to sustain a finding of agency of plaintiff's grantor for latter's grantor.

4. **Principal and agent 171(4)—Conduct of grantor held not ratification of acts of grantee and another in disposing of land to plaintiff.**

Conduct of grantor in receiving money paid by plaintiff to grantee for land *held* not to operate as ratification of acts of grantee, and another, who represented grantor in other sales of land, in disposing of land to plaintiff through fraudulent misrepresentation.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit in equity by John H. Hendriks against the Atlas Land Company and another. Decree for plaintiff, and the named defendant appeals. Reversed.

John J. Sullivan, Fred A. Wright, and George B. Thummel, all of Omaha, Neb., for appellant.

Charles Battelle, of Omaha, Neb., and Matthew Westrate, of Waterloo, Iowa (W. R. Jayne, of Muscatine, Iowa, on the brief), for appellee.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied July 21, 1924.

LEWIS, Circuit Judge. In March, 1922, Hendriks, plaintiff below, sued appellant and Fred S. Essex for cancellation of a contract which Hendriks made with Essex for the purchase of a half-section of land in Holt county, Nebraska, for cancellation of Essex's deed conveying the land to Hendriks, for cancellation of a mortgage for $2,000 on the land, given by Hendriks to Essex as part of the purchase price, and for judgment against appellant for $9,643, paid by Hendriks to Essex on the purchase price and by him alleged to have been turned over to appellant. The right to the relief sought is based on the claim (1) that the land belonged to appellant; (2) that Essex and others co-operating with him in the transaction were the agents of appellant; and (3) that Hendriks was induced to buy the land on account of fraudulent statements and representations alleged to have been made by Essex and others who at the time represented appellant. Decree as prayed. Atlas Land Company appealed. Essex did not.

It is an admitted fact that the land belonged to Atlas Land Company, title being held in the name of P. E. McKillip, one of its officers; but Essex and appellant in separate answers each denied the agency charged, also the fraud; and alleged that by separate and independent transactions appellant sold the land to Essex and Essex sold it to Hendriks, and that appellant took no part in the sale to Hendriks. It is conceded, in fact alleged by Hendriks, that on April 16, 1920, he entered into a written contract with Essex to buy the land from him at an agreed price of $33,600. Hendriks is a resident of Iowa. By appointment he met Essex at Sioux City and went to see the land. One Patrick Dorsey went with them at Essex's request, and the contract to purchase was drawn up and executed while they were in Holt county. The contract provided that Hendriks should take the land subject to mortgage for $23,600, the remainder of the consideration to be paid and deed to be delivered on or before May 1, 1920. When the contract was executed Hendriks gave Essex a check for $3,000 on the purchase price. Essex testified that he told Hendriks that he had a contract to buy the land from appellant and could deed it to him either way he wanted it; and Hendriks testified that he replied: "I want a deed from you." Essex and Dorsey resided at Pender, Nebraska. They officed together. It appears that they acted as agents for the sale and purchase of lands, and sometimes bought and sold lands on their own account. They were not partners. Appellant's office was at Columbus, Nebraska. It listed some of its lands for sale with Dorsey and he acted as its sales agent in such transactions. Essex was never its agent. He so testified and so did appellant's officers. This testimony is not contradicted. Early in April, 1920, Essex proposed to appellant through Dorsey to buy this half-section. After some negotiations carried on by Dorsey appellant agreed to sell the half-section to Essex for $30,000, $20,000 of which was to be represented by a mortgage on the land. About April 12 appellant prepared a written contract embodying those terms and sent it to Pender to be signed by Essex. Essex could not raise the cash payments and did not sign the contract. Further negotiations followed, and on April 21, 1920, Essex entered into a contract with ap-

pellant to buy the land for $30,000, making his cash payments correspond with payments that he would receive from Hendriks, and providing that $21,600 of the purchase price should be in a mortgage on the land.

Appellant's officers testified that the first time they heard of Hendriks was when they received from Essex his $3,000 check given on April 16, which they credited to Essex on the sale that they had agreed to make to him, although it had not at that time been put in the shape of a written contract, but that the verbal understanding with him made in the early part of April was confirmed by the contract of April 21, with some changes. The cash payments called for in the contract of April 21 were $8,400, which, together with the $21,600 mortgage made up the agreed consideration of $30,000. Early in May appellant drew up a deed from McKillip to Essex conveying the half-section, which was executed. It also at the same time drew a deed from Essex to Hendriks and sent one of its representatives, Mr. Sunderlin, to Pender to make settlement with Essex. Sunderlin and Essex then went on to Muscatine, Iowa, to close the sale to Hendriks. Hendriks turned over to Essex and Sunderlin a bank draft of $5,043, payable to appellant, and one for $1,600 payable to Essex. A deduction in price had been made on account of shortage in acres. Hendriks at the same time executed and delivered to Essex a $2,000 mortgage on the land. Essex had given appellant a mortgage on it for the $21,600. Essex delivered his deed to Hendriks conveying the half-section. Sunderlin then returned to Columbus with the two bank drafts and the $2,000 mortgage, and on checking the matter up sent the mortgage and the $1,600 draft to Essex. That is what Essex got, $3,600, out of the transaction. Appellant at no time claimed any interest in nor did it receive any part of the $1,600, or the $2,000 mortgage. They belonged to Essex. Dorsey claimed that he had made the sale to Essex, and for that service appellant paid Dorsey the usual commission, $775, as exhibited by two checks which Dorsey cashed, on one of which was this notation: "a/c½ Essex Com.," and on the other this: "a/c balance of commission due on Essex-Hendriks deal." Essex did not receive any of Dorsey's commission. Essex and appellant's officers testified that the only transaction ever had between appellant and Essex was the sale of the half-section to Essex, that Essex never represented appellant as agent or otherwise in his sale to Hendriks or in any other sale or transaction; and appellant's officers further testified that the first they ever knew of Hendriks was when they received a check given by him on April 16, 1920, to Essex, which appellant credited on Essex's contract of purchase. Essex testified that he requested Dorsey to go with him and Hendriks to see the land and assist him in making the sale to Hendriks, and that he paid Dorsey for so doing. Dorsey testified to the same thing, and he and appellant's officers testified that appellant had nothing whatever to do with his going with Essex and Hendriks on that occasion and that appellant did not pay him anything on account thereof.

[1-4] It may be conceded that the statements and representations claimed to have been made by Essex and Dorsey, which they deny,

about the value of the land, its quality and productivity were false and fraudulent and justified the court in cancelling the transaction in so far as Essex was interested; but even so, the rights of appellant could not be affected thereby, nor it required to make restitution of what it had received if those who made the fraudulent representations were not its agents and acting in its behalf at the time. To sustain that allegation, an indispensable fact in order to hold appellant, Hendriks was permitted to testify that Essex and Dorsey told him that they were the agents of appellant for the sale of the land. This evidence was, of course, wholly incompetent to prove the fact of agency. Railway Co. v. National Bank, 174 Fed. 923, 929, 98 C. C. A. 535; Walmsley v. Quigley, 129 Fed. 583, 585, 64 C. C. A. 151; Union Guaranty & Trust Co. v. Robinson, 79 Fed. 420, 422, 24 C. C. A. 650; 10 Encyclopedia of Evidence, p. 15; Mechem on Agency (1st Ed.) § 100. This principle is not doubted, and to meet it it is contended (a) that the circumstances of the entire transaction, including all that was done relative to the conveyance to Essex and the conveyance from him to Hendriks, are sufficient circumstantial evidence to sustain a finding of agency, and (b) that the conduct of appellant operated as a ratification of the acts of Essex and Dorsey in disposing of the land. We think neither contention can be sustained and that they are both wholly without merit. A provision in the contract between Essex and Hendriks is relied on. It is this:

"All payments and settlements under this contract to be made at the office of the Atlas Land Company, Columbus, Nebraska."

But it is apparent that Essex, realizing that he would be unable financially to close his purchase unless the two transactions were closed at the same time, saw the necessity of such a provision, and this is evidently the only purpose it was intended to serve. It did serve that purpose. The two checks given by appellant to Dorsey for his commission on the sale which he made to Essex have on them the notations quoted above; but this seems wholly negligible in view of the testimony of appellant's officers that they were put there by a clerk as a matter of convenience for bookkeeping and to designate the particular transaction. They cannot be regarded as any proof of payment of a commission to Essex in view of the uncontradicted evidence that Essex did not receive a commission and no part of either of those checks. Sunderlin was sent with Essex when Essex's sale to Hendriks was closed. This is relied on. But the obvious purpose of this was to protect the appellant in its interest in the lands. It could not have been expected of it that it would deliver its deed to Essex without receiving all of the cash that it was to receive under its contract with him, and he was not able to produce it. He got it from Hendriks and it was handed to Sunderlin when the deeds to Essex and Hendriks were delivered, a transaction in entire accord with appellant's contention throughout.

Much is said about the deed from McKillip to Essex reciting a consideration of $32,000, instead of $30,000, but the testimony shows beyond question that the actual consideration was $30,000 and that that was what the appellant received, less the amount deducted on

account of acreage. We think it a far-fetched conclusion that any of these facts, or all of them, tended in any way to show that either Essex or Dorsey was the agent of appellant in the sale of the land to Hendriks. They all testified positively that they were not appellant's agents. Neither do these facts and circumstances tend to convince that appellant ratified anything that was done by Essex and Dorsey in the sale to Hendriks. As Essex has not appealed, the testimony touching the alleged false and fraudulent statements and representations about the land made by Essex and Dorsey need not be discussed. They were not the agents of appellant in the transaction between Essex and Hendriks. Both Essex and Dorsey testified that they did not make the statements attributed to them by Hendriks, and he went upon the land himself to examine and personally inspect it before he contracted with Essex to buy it. Furthermore, although he later corresponded with appellant about the interest on the underlying mortgage, which was in default, he gave no intimation of any claim against appellant nor suggested that he had been defrauded by any one; and it was not until appellant was served with summons in this case, two years after Hendriks made his contract, that it first learned that he made the claims set out in his complaint. Such conduct is inconsistent with the position he now takes.

The decree and judgment against appellant are reversed and the district court is directed to vacate and set them aside, except the parts thereof that annul the contract of purchase and sale between Essex and Hendriks, of date April 16, 1920, and the $2,000 mortgage on the land given by Hendriks to Essex. Appellant will recover its costs.