574

ANTON F. MAIXNER ET AL., APPELLANTS, V. TRAVELERS IN-
SURANCE COMPANY ET AL., APPELLEES.

276 N. W. 163

FILED NOVEMBER 26, 1937. NO. 30120.

*Littrell & Patz*, for appellants.

*Hall, Cline & Williams* and *Walker & McArthur, contra.*

Heard before GOSS, C. J., DAY, PAINE, CARTER and MESS-
MORE, JJ., and TEWELL, District Judge.

PAINE, J.

This is an action for fraud and deceit, and for the re-
turn of $500 to plaintiffs, who have elected to rescind a
contract for the purchase of real estate, upon which $500
was paid down. The plaintiffs, having lost in the lower
court, appeal to this court.

The evidence discloses that the plaintiffs have resided
at Brainard, Nebraska, for over five years, moving there
from Loveland, Colorado, but had lived in Nebraska for
many years prior to moving to Colorado; that the plain-
tiffs are husband and wife, and are farmers, and each of
them speaks the Bohemian language much more fluently
than they do English; that the defendant E. A. Marshall

had resided at Stanton, Nebraska, since 1912, and was connected in this deal with W. H. Hyland, a real estate agent, also residing at Stanton since 1906.

The plaintiffs owned land in Colorado which they had advertised for sale in an Omaha paper, and Marshall and Hyland, seeing the advertisement, got in touch with them to trade them something for their land in Colorado. They first tried to trade them a piece of land belonging to a man named Wagner, but were unable to get the title to this land. Later they found that a half-section of land in Antelope county, which had been foreclosed by the Travelers Insurance Company, could be purchased for $4,000; at least W. F. Powers, who was in charge of over 100 of the insurance company's farms in the vicinity of Plainview, said that he would recommend to the Travelers Insurance Company that they should accept an offer of that amount.

Marshall took the plaintiffs to see this land, and on December 12, 1934, the plaintiffs signed a contract to buy the half-section in Antelope county for a consideration of $10,500, of which amount they paid $500 in cash and agreed to pay $1,500 March 1, 1935, and were to pay the balance by deeding their 80 acres of land in Larimer county, Colorado, together with two lots in Loveland, Colorado, and, in addition, to give back a mortgage of $2,500 on the half-section they were buying. This contract, being exhibit No. 16, left the name of the owner of the Antelope county half-section in blank. E. A. Marshall represented to the plaintiffs that the Antelope county half-section was first-class land and very productive, and well worth $12,-000, but he could let them have it for $10,500. Plaintiffs testify that he told them they did not need to spade the soil because it was dark and productive, and they could take his word for it. On the day they visited the land in Marshall's car, the snow was deep, but they waded out through the snow for a ways, although they were not at the farm more than 15 or 20 minutes. Marshall said if they would buy the farm he could resell it for them in six months for around $12,000. Marshall took them to the

office of Hyland in Stanton, at which place the contract was dictated by Marshall and typed by Hyland, and signed by plaintiffs alone. It was falsely stated to the plaintiffs that the land was owned by a "Mr. Johnson," residing in Sioux City, and Marshall said he would leave immediately and go to Sioux City and deliver the money to him. That instead of going to Sioux City he at once drove to Plainview, Nebraska, arriving at the office of W. F. Powers at about 7:30 in the evening, and represented to Mr. Powers that he had secured a buyer for the half-section, and after some conversation a contract was drawn, dated December 12, 1934, between W. F. Powers, agent of the Travelers Insurance Company, and W. H. Hyland, for the half-section of Antelope county land for $4,000, upon which contract Marshall paid Powers $500 in currency that night, and the contract agreed that $1,500 would be paid March 1, 1935, and a $2,000 mortgage to be taken back on the land for five years at 5 per cent., and this contract was sent to Omaha to be forwarded to the Travelers Insurance Company at Hartford for approval. Marshall was to receive 2½ per cent. commission on this sale.

It developed in the evidence that "Mr. Johnson," the purported owner of the land, was an entirely fictitious person, and that Marshall, at the time he made the contract with the plaintiffs in Hyland's office, had no authority whatever to contract to sell the half-section of land in Antelope county belonging to the Travelers Insurance Company. Plaintiffs had no idea at the time they signed the contract that the land did not belong to "Mr. Johnson" of Sioux City. The plaintiffs lived at Brainard, which was around 200 miles away from the land in Antelope county. They placed entire confidence in the representations made to them by Marshall and Hyland, and were deceived thereby. The land was not as represented, and W. F. Powers testified that it was a sandy top soil, and that it was not a first-class farm, and that $4,000 was its value under normal conditions. The plaintiffs upon their return home began to investigate the land they had contracted to buy,

got a soil map from the university at Lincoln, and learned that it was sandy land instead of black dirt, and then employed attorneys to rescind the contract and secure the return of their $500.

The petition was filed in the municipal court in the city of Lincoln, and summons was served upon the Travelers Insurance Company by delivering the same to M. A. Fairchild, chief clerk of the insurance department of the state of Nebraska, being their statutory agent for the service of process, and summons was also delivered to the sheriff of Stanton county for service upon W. H. Hyland and E. A. Marshall.

At the trial in the municipal court, the motion of the Travelers Insurance Company to dismiss the action, for the reason that there was insufficient evidence to sustain a judgment against said company, was sustained. Marshall and Hyland then moved for a dismissal on the ground that they were nonresidents, and, the action against the Travelers Insurance Company having been dismissed, that the court was without jurisdiction over their person, and this motion was also sustained. Plaintiffs thereupon appealed to the district court. A new petition was filed, and answers were filed by the Travelers Insurance Company, also by Hyland and Marshall, together with replies, after special appearances had been overruled. A jury was duly impaneled, and the evidence of the plaintiffs taken, whereupon the Travelers Insurance Company moved for a directed verdict in its favor, which motion was sustained by the court, and the motion to dismiss by defendants Hyland and Marshall, on the ground that they were each nonresidents of Lancaster county, was also sustained for lack of jurisdiction over them, and an appeal was taken to this court.

Among the eight errors relied upon for reversal, we find these: That the court erred in holding there was no evidence of agency between E. A. Marshall and the Travelers Insurance Company, or any facts from which an inference of agency could be drawn, and upon which reason-

able and impartial minds could differ; that the court erred in denying the plaintiffs the right of trial by jury upon the disputed questions of fact; that the court erred in holding that the Travelers Insurance Company could lawfully be the beneficiary of the fraud perpetrated upon the plaintiffs; that the court erred in holding that the Travelers Insurance Company was not estopped from denying the agency of E. A. Marshall, and from denying liability for the return of the benefits derived from the fraud practiced upon the plaintiffs.

The plaintiffs insist that the Travelers Insurance Company was an undisclosed principal and received the $500 which had been obtained by fraud from the plaintiffs by Marshall and Hyland, and after learning how the $500 was obtained from the plaintiffs, by still retaining such $500 it thereby ratified all that Marshall and Hyland did in obtaining the false and fraudulent contract from the plaintiffs.

It is contended by the Travelers Insurance Company that parties dealing with an agent assuming to have authority to sell land are put upon inquiry to ascertain the extent of his authority.

"Ordinarily, authority to sell will not authorize a sale for anything but money, and does not authorize an exchange." 2 Am. Jur., Agency, sec. 147.

It has been held by this court that an agency might arise by implication from acts done by an agent with the consent or acquiescence of the principal. *Goldfein v. Continental Ins. Co.*, 125 Neb. 112, 249 N. W. 78. But in this case such consent and acquiescence are entirely lacking, for Marshall never in any way brought to Powers' attention that there was any deal for the sale of the Travelers Insurance Company's half-section of land to any one but Hyland, and never in any way acquainted Powers with the contemplated deal with the plaintiffs, and we are of the opinion that there is no evidence in any way connecting the Travelers Insurance Company with the obligations and liabilities of the contract made with the plaintiffs by Mar-

shall and Hyland to sell them this half-section of land in Antelope county.

The plaintiffs insist that, after the Travelers Insurance Company had been given all of the facts of the swindle perpetrated upon the plaintiffs, by retaining the $500 paid to Powers on the contract with Hyland it has elected to ratify a part of such transaction and reject the residue, and that, even though it is true that no agency existed prior to the acceptance of the $500, it is now bound, upon receiving notice of the fraud perpetrated upon the plaintiffs, to repudiate the contract with Hyland and return the $500 received in that contract to the plaintiffs, and plaintiffs cite 1 Restatement, Agency, 582, sec. 261, comment *a*, but, as stated above, the evidence shows clearly that Powers in making the contract with Hyland through Marshall knew nothing about the deal of the plaintiffs, and it is just as clear from the evidence that the plaintiffs did not learn until some time afterwards that the Travelers Insurance Company owned the land they were buying, but believed that the land belonged to a "Mr. Johnson" of Sioux City, Iowa.

The law is that one professing to contract as agent is personally liable if, unknown to the other party, his purported principal is actually nonexistent, for the agent impliedly represents or warrants that his principal has existence or legal competency, and he must see that his principal is bound or he himself will be liable. 3 C. J. S. 118; *Durant & Co. v. Roberts and Keighley, Maxsted & Co.,* 1 Q. B. (Eng.) 629; *Keighley, Maxsted & Co. v. Durant,* A. C. (Eng.) 240; *Minder & Jorgenson Land Co. v. Brustuen,* 24 S. Dak. 537, 124 N. W. 723; *Winkleblack v. National Exchange Bank,* 155 Mo. App. 1, 136 S. W. 712; *Houghton & Co. v. Todd,* 58 Neb. 360, 78 N. W. 634.

The burden was on the plaintiffs seeking to recover their $500, on the theory that the principal ratified the agent's unauthorized act by retaining the money paid on the other contract, to establish that the principal obtained knowledge of Marshall's unauthorized act before it had changed

its position, which plaintiffs failed to do. *Clark v. Opp*, 66 Pac. (2d) (Or.) 1179; *Johnson v. City Co.*, 78 Fed. (2d) 782.

The Travelers Insurance Company has a contract with Hyland upon which $500 has been paid and the abstract furnished, and because of the rights and obligations growing out of that contract it cannot well give the $500 it has received to bind that contract over to the plaintiffs, to whom it is in nowise legally liable, for it is in exactly the same position as if its contract to sell to Hyland had been made the day before Marshall and Hyland made their contract between the plaintiffs and the fictitious "Mr. Johnson." The transaction with the plaintiffs was not made with an agent purporting to represent the Travelers Insurance Company.

There were two separate and distinct contracts made. In the first deal, upon which the plaintiffs paid their $500 in Hyland's office in Stanton, there was nothing which connected the Travelers Insurance Company, directly or indirectly, with the transaction; in the second deal, made in the evening of the same day in the office of Powers at Plainview, Marshall paid $500 to Powers to secure a contract from the Travelers Insurance Company to sell the land to Hyland for $4,000, and in this second deal there was no mention made, directly or indirectly, of the plaintiffs.

The Travelers Insurance Company, principal in the second contract, received that to which it was entitled, regardless of the unauthorized act, and if it cannot make restitution without loss of that which it is entitled to keep, ratification does not result from a failure to return the benefits received. 6 Neb. Law Bulletin, 141; *German American State Bank v. Mutual Benefit, Health & Accident Ass'n*, 107 Neb. 124, 185 N. W. 313; *Atlas Land Co. v. Hendriks*, 298 Fed. 589.

The interests, rights, liabilities, and obligations of the parties in the two contracts are in law entirely distinct, and the Travelers Insurance Company was in nowise a

party to the first transaction, and, secondly, there is no legal obligation on the Travelers Insurance Company to pay the $500 which it received on the second transaction to the plaintiffs, and the judgment of the trial court ·is therefore

AFFIRMED.

TEWELL, District Judge, concurs in the result.