NEBRASKA STATE BANK OF NORFOLK, APPELLANT, v. SCHOOL DISTRICT OF CITY OF PIERCE, APPELLEE.

FILED FEBRUARY 5, 1932. No. 28026.

*Shurtleff & Spillman,* for appellant.

*Douglas Cones* and *M. H. Leamy, contra.*

Heard before Goss, C. J., Dean, Eberly and Paine, JJ., and Wright, District Judge.

Wright, District Judge.

This action was brought by Nebraska State Bank of Norfolk, Nebraska, as plaintiff, against School District of the City of Pierce, Nebraska, defendant. During the course of the litigation, the bank became insolvent, and thereupon Clarence G. Bliss, as receiver of plaintiff bank, was substituted as plaintiff. The parties will be designated, as in the district court, plaintiff and defendant, respectively.

Plaintiff seeks to recover as assignee of 44 warrants drawn on the defendant's treasurer, each regular on its face except that, while it was signed by the secretary, it was not signed by the president or vice-president of defendant's board, as the statute requires. It is agreed by the parties that each was issued for the payment of a valid claim against the defendant which had been examined, approved and allowed by its board.

For five years immediately prior to March, 1928, Frank Pilger was the treasurer of defendant school district and also president and managing officer of the Pierce State Bank of Pierce, Nebraska, in which bank he deposited defendant's funds in his hands as treasurer.

It is clear that, under a custom of several years standing, the defendant's board had adopted a plan of issuing warrants for local claims signed only by its secretary, and that Pilger as treasurer had accepted these as sufficient.

The secretary testified: "The board authorized the secretary that when the wages of the teachers or the janitors and firemen at the end of the month came due that the secretary issue a warrant for their pay." These warrants were generally accepted and treated by the holders and banks in the city of Pierce as sufficient to insure payment by the treasurer. Of the warrants involved in this action, about two-thirds were first presented to one of the two banks in the city of Pierce, other than Pilger's bank, where they were treated and cleared as checks drawn on Pilger's bank. The remainder were presented directly to his bank and all were accepted and paid for from its funds. Thereupon Pilger placed upon the warrant his certificate as treasurer that the same had been presented to him for payment. No charge on the bank books was made against Pilger's account as treasurer, although there was then sufficient funds in the account to meet the payment. Pilger's bank then in each instance treated the warrant as a valid warrant belonging to it and sold the same to the plaintiff bank for face value, transferring it by indorsement and delivery in the same manner as was its custom in handling ordinary commercial paper. By this course of procedure, Pilger's bank retained the funds of defendant deposited with it, nor were the funds of the bank depleted for any considerable time, for it is agreed that the warrants were sold and Pilger's bank received credit therefor within 24 hours from the time the same were registered by Pilger as treasurer. In each instance, when the warrant involved was presented to the treasurer and by him registered, he had in his hands and under his control and had on deposit on open account in his bank funds of the defendant more than sufficient to pay the same; and the reserve of the bank on these occasions was sufficient to have paid the treasurer the sum on his check on demand. The treasurer, however, instead of paying the warrant from funds in his hands, undertook to purchase it for his bank.

The warrants of claims in suit were purchased by plaintiff bank in several lots between December 3, 1927, and

February 18, 1928, in the aggregate face value of $7,041.19. On March 5, 1928, the Pierce State Bank became insolvent and closed its doors. There was then on deposit in that bank on open account to the credit of Pilger, as treasurer of the defendant, the sum of $5,751.65, funds belonging to defendant and subject to the order of Pilger as its treasurer. Pilger resigned as treasurer on March 19, 1928. He refused and has failed to turn over to his successor any of the files or records of his office, or any money in his hands or under his control as treasurer; and no part of defendant's funds deposited in his bank when it closed have ben paid.

It was stipulated on the trial that, for more than three years prior to the time plaintiff purchased the warrants in question, the defendant had failed and neglected to audit the accounts of its treasurer or to require him to make a formal monthly statement in writing of the funds of the district or to exhibit or return the canceled, paid or receipted warrants or vouchers from the payees.

Under appropriate pleadings, the district court found that, at the time of the closing of the Pierce State Bank, the district had on deposit in that bank the sum of $5,751.65; that the aggregate amount of plaintiff's claims against the district was $7,041.19, which was based on school district warrants issued by the defendant district not countersigned by the school district president, and that therefore such warrants were void, and were not eligible to registration by the district treasurer; that the plaintiff was the assignee and owner of the original claims which formed the basis of each of these warrants; that the defendant district was entitled to an equitable offset against the total amount of said warrants in the sum of $5,751.65, the amount of the deposit in the Pierce State Bank at the time it closed, which was allowed, and thereupon judgment was entered for the difference between the amount of the claims and such offset, $1,289.54, from which the plaintiff has appealed.

It is conceded that the plaintiff purchased the warrants

without actual knowledge of the facts other than was disclosed by the instruments themselves, and it also seems fairly certain that the school board had no knowledge of the practice of registering and selling the same, but believed that they were being paid from the district's funds in the hands of the treasurer. The treasurer, however, had other plans. He was not only the trusted officer of the defendant, but also the president and managing officer of a bank which was interested in holding possession of defendant's funds. It needs no argument to demonstrate the interest his bank had in retaining these funds, nor can there be any serious doubt that throughout the whole course of his transactions he was acting in the interests of his bank and with little regard for those of the defendant. There is good authority for the proposition that "no man can serve two masters" and Pilger proved no exception to the rule.

There is little, if any, dispute as to the facts. The questions presented are: Did the plaintiff take as assignee subject to defenses the defendant might have against the Pierce State Bank? and, if so, did defendant then have the right to an equitable offset against the plaintiff for the amount of its deposit in that bank at the time it closed?

Plaintiff contends that, the warrants being irregular on their face, the treasurer could not legally pay the same; that it is in the position of assignee of the several claims, subject in its hands only to the equities in force between the original parties at the time it took the assignment, and not to equities accruing thereafter; that, being a remote assignee, it is not affected by equities between the maker and an intermediate indorsee where there could have been no defense to the action against the original payee, and inquires: "Does a nonnegotiable chose in action in Nebraska gather defenses as it rolls along, and must the next holder investigate the transaction between the payor and every intermediate indorsee?" Whatever the rule may be in other jurisdictions, we think this court has already determined that as a general rule it does. In *Henefin v. Live*

*Stock Nat. Bank,* 116 Neb. 331, where the question of right of an assignee of a chose in action was involved, the court expressly held: "Ordinarily, an assignee of a chose in action acquires no greater right than was possessed by his assignor, but simply stands in the shoes of the latter." We see no reason for declaring a different rule, and under the facts and circumstances here presented have no hesitancy in holding that the plaintiff, by its several assignments, took no greater right than that possessed by the Pierce State Bank and simply stands in its shoes. Where no rule of expediency or necessity controls, such as prompts some of the arbitrary rules pertaining to negotiable instruments, an assignee takes no greater or better right than his assignor. The supreme court of Illinois announces the same rule in *Commercial Nat. Bank v. Burch,* 141 Ill. 519, and in the course of the opinion say: "Each successive assignee of a chose in action takes it subject to the equities existing between the original assignor and his immediate assignee."

This, then, brings us to a consideration of the rights of the Pierce State Bank under which plaintiff claims. If, under the circumstances, the defendant could have asserted an offset against that bank, then it follows that plaintiff is subjected to the same right.

While it is a well-recognized rule that knowledge of an officer of a bank acquired while acting beyond the scope of his authority will not be imputed to the bank, we feel that under the circumstances in this case the knowledge of the treasurer, Pilger, who was president and managing officer of the bank, should be imputed to it. *Brownell v. Ruwe,* 117 Neb. 407; *State v. American State Bank,* 108 Neb. 92; *Emerado Farmers Elevator Co. v. Farmers Bank,* 20 N. Dak. 270. The entire management and control of the bank transactions, so far as the matters involved in this litigation go, were in his hands. While occupying the position of treasurer of defendant district, he placed in the hands of the bank the funds belonging to the district. The bank, by receiving the deposit with knowledge that

it belonged to the defendant, held it as trustee for the school district. *State v. Midland State Bank*, 52 Neb. 1. All of Pilger's acts in the premises were in the interest of the bank in taking and keeping possession of the fund and in utter disregard of defendant's rights.

It is established beyond question that the defendant, in the issuance of the warrants in question, intended that the same should be paid from the funds held by the treasurer and, in fact, believed that this had been done. This had been the common practice between it and its treasurer. Warrants of this kind had been by him recognized as valid and charged against this fund and the board had been by deceit led to believe that all those presented had been paid. The purchase of these warrants was not intended to and did not benefit the defendant. There was no lawful authority in the treasurer to certify the fact of presentation for payment so that thereafter the warrant should draw interest, and where, under these circumstances, the treasurer made the certificate and then as president and manager undertook to make his bank a valid holder of the same, it gave the bank rights clouded by many doubts.

We have no doubt, had the Pierce State Bank brought suit on these claims, the defendant could have at least insisted that it apply trust funds in its hands and belonging to the defendant toward the satisfaction of the debt. It would seem, under the law and the equities of the case, that the relief granted by the district court covers all to which the plaintiff is entitled, and its judgment should be and is

AFFIRMED.