UNION NATIONAL BANK OF FREMONT, APPELLANT, V. VILLAGE OF BEEMER, APPELLEE.

FILED SEPTEMBER 23, 1932. No. 27956.

*Courtright, Sidner, Lee & Gunderson*, for appellant.

*John P. Breen* and *G. F. Nye, contra.*

Heard before ROSE, GOOD and DAY, JJ., and CHAPPELL and LANDIS, District Judges.

CHAPPELL, District Judge.

This is an equity action for trial *de novo* in this court. In the early summer of 1927 the defendant village of Beemer commenced proceedings to construct a sewer under the statutory provisions now found in sections 17-528 to 17-540, Comp. St. 1929. These proceedings culminated in two contracts with H. J. Peterson Company, one dated July 8, 1927, for the construction of a sewer in District No. 1, and the other dated November 18, 1927, for the construction of a short connected additional sewer in District No. 2. The contracts were completed by the contractor and the work accepted in December, 1927. Special assessments therefor were not levied until January 23, 1928. However, the board of trustees allowed the contractor partial estimates and payments on the contracts and issued to him and to others for incidental expense of the sewers certain warrants in controversy during the summer of 1927 to bear interest under the statute as it then existed at 7 per cent. On March 22, 1928, an ordinance authorizing the issuance and sale of bonds to pay the additional costs of sewer construction was passed by the village board.

At the time that the warrants in controversy were issued there was neither a special benefit assessment levy made nor a bond issue ordinance passed; hence, no fund whatever existed against which the warrants might be

drawn. Each warrant in controversy provided appropriate spaces where there should be inserted the amount of the fund levied against which the warrant was drawn, and also the amount of the warrants previously issued against such fund, but these spaces were never filled out. The warrants, immediately after being issued, were purchased by the Beemer State Bank from the various payees named in the warrants, which bank presented them to the village treasurer, Charles S. Albright, who registered them in the name of the original payees, "Not paid for want of funds." During all of this period and thereafter one Paul Wupper was the president of the Beemer State Bank and the mayor of the defendant village, and one J. S. Severa was the cashier of the Beemer State Bank and the clerk for defendant village.

In February, 1928, after a levy of the special benefit assessments, various property owners began to pay the village treasurer their respective special assessments, and the assessments were received by the treasurer, who took them to the Beemer State Bank and deposited them in that bank, the same being the bank designated by the village board as their depository. Each deposit of such special assessments was made by the treasurer with a deposit ticket or slip with notations written thereon that such deposits were "Sewer fund" or "Sewer assessments," and the bank officers then signed duplicates of these deposit tickets which they delivered to the treasurer. Special assessment deposits so made amounted on March 26, 1928, to $6,713.31. On June 11, 1928, the proceeds of the sewer bond sale came into the hands of the village treasurer and, as in the case of the special assessments, a deposit ticket or slip was made out by the bank cashier himself and a duplicate delivered to the treasurer, and the cashier himself entered on the face of such tickets the words "Sewer bonds, $17,497," and thereupon the treasurer deposited the draft, stating as he did so that this draft money made enough sewer fund with special assessment deposits already made to take up all the war-

rants then held by the bank, and in reply to such statement the president of the bank, then mayor of the village, and the cashier of the bank, then village clerk, replied in substance that they were glad that the money was there, that they would get the warrants and figure them up and give them to him, the village treasurer.

On March 1, 1928, two separate demands were made upon the bank for the warrants. On March 2, 1928, March 13, 1928, and June 12, 1928, respectively, demands were made by the village treasurer for the canceled warrants.

The Beemer State Bank, without defendant's knowledge and before any such deposits had been made by defendant, had sold or transferred for credit most of the warrants to this plaintiff. Defendant did not learn of this fact and plaintiff gave no notice of such transfer until after the deposits had all been made and until after the Beemer State Bank had become insolvent and gone into receivership, and until long after the sum of $24,210.-31, enough money to have paid all warrants and interest in full, had been deposited in such bank, as they allege, for that purpose. After the Beemer State Bank had become insolvent on September 18, 1928, the plaintiff notified the defendant's treasurer for the first time and defendants learned for the first time that plaintiff had purchased these warrants or had possession of them, claiming to hold them as assignee and transferee of the Beemer State Bank.

Thereafter plaintiff filed its petition in equity praying that plaintiff be decreed to be owner and holder of the warrants, describing them and the indebtedness represented by such warrants and upon the contracts merging in said warrants, and that each of the defendants (payees) other than the defendant village of Beemer be decreed to have sold their respective claims against the defendant village of Beemer in the amount represented by said warrants, and the plaintiff be decreed to be the owner and holder thereof, and that plaintiff's title in and

to said warrants and the indebtedness represented thereby be quieted as against each of the defendants other than the defendant village of Beemer, the respective amounts with interest thereon, and such other and further relief as equity may require. Upon issues joined and trial thereof in the equity court, the trial judge found generally for the defendants, and it comes to this court upon appeal therefrom.

The trial court made many findings in its decree and assigned many reasons for its decision. Counsel for appellant and appellee have both filed voluminous briefs in this court citing many well-reasoned authorities and presenting clear cut and logical arguments in opposition to and in support of such decree. This court, after a careful perusal of the record and a reading of the authorities presented by counsel, believe that there are, in fact, but two questions presented for disposition by this court, and will, therefore, confine itself to those questions. They are: (1) Did the plaintiff take as assignee or transferee of these warrants subject to all defenses which defendant might have against the Beemer State Bank? (2) If so, did the defendant have the right to an equitable set-off against plaintiff for the amount of such deposits in the Beemer State Bank at the time it closed?

Both of these questions are answered in the affirmative in a similar case by a recent decision of this court entitled *Nebraska State Bank v. School District*, 122 Neb. 483. In that case this court said: "Ordinarily, an assignee of a chose in action takes the same right as was possessed by, and subject to the same defenses and equities which could be enforced against, his assignor."

In other Nebraska cases this court has said: "It is well settled that such instruments (warrants) are not negotiable instruments, and that a purchaser thereof does not take the same discharged of any equities existing against the original holder." *State v. Cook*, 43 Neb. 318. See *School District v. Stough*, 4 Neb. 357; *Union P. R. Co. v. Buffalo County*, 9 Neb. 449; *Burlington & M. R. R.*

*Co. v. Clay County,* 13 Neb. 367; 19 R. C. L. 1036, sec. 326; Comp. St. 1929, sec. 20-303.

It is admitted that plaintiff gave defendant's village treasurer, Charles S. Albright, no notice of its alleged purchase of the warrants from the Beemer State Bank until after the deposits were all made and the bank was in receivership. Therefore, every defense which defendant could have made against that bank or its receiver in a suit on the warrants is available to defendant as against the plaintiff herein. 5 C. J. 934; 2 R. C. L. 687, sec. 42; 8 C. J. 600; *Gaullagher v. Caldwell,* 22 Pa. St. 300; *North Bergen v. Eager,* 41 N. J. Law, 184; *American Bridge Co. v. Boston,* 202 Mass. 374.

The fact that the president of the Beemer State Bank and the cashier thereof, who were mayor and clerk respectively of defendant village, knew of the assignments to plaintiff would not be imputed notice or knowledge of the defendant village. The mayor and village clerk as president and cashier of the Beemer State Bank evidently purposely kept what they knew about the assignments from the village treasurer at all times, even when inquiry and demand for them were made by him, and they acted at all times for themselves and the bank. The village treasurer was the village official "without whose consent the money may not properly be paid out."

Many authorities have rightly said: "Where the public is the debtor, notice should be given to those officials without whose consent the money may not properly be paid out;" and, further, that notice to the debtor must be certain and specific that the debtor may be properly and fully advised that a new creditor has been substituted by the assignment. 5 C. J. 935. See 14-a C. J. 490; *Exchange Bank of Wilcox v. Nebraska Underwriters Ins. Co.,* 84 Neb. 110; *Swan v. Craig,* 73 Neb. 182; *Houghton & Co. v. Todd,* 58 Neb. 360; *Buffalo County Nat. Bank v. Sharpe,* 40 Neb. 123; *Koehler v. Dodge,* 31 Neb. 328; *Bankers Building & Loan Ass'n v. Thomas,* 3 Neb. (Unof.) 758; *First Methodist Episcopal Church v. Thompson,* 22 S. W. (2d.) (Tex. Civ. App.) 346.

It may be conceded that plaintiff took the warrants without actual knowledge of the facts other than disclosed by the instruments themselves, although there is some evidence that they simply held them for collection. The president and cashier respectively of the Beemer State Bank, trusted mayor and village clerk for defendant, however, throughout all the transactions were evidently acting in the interest of themselves and the bank without any regard for the rights of the defendant. Plaintiff now, however, contends that, if they took subject to defense, certainly they only took subject to such defenses as existed at the time of the purchase. However, in the case of *Nebraska State Bank v. School District,* 122 Neb. 483, this court said: "Plaintiff contends that, the warrants being irregular on their face, (the warrants in this case were irregular, if not void, in and of themselves) the treasurer could not legally pay the same; that it is in the position of assignee of the several claims, subject in its hands only to the equities in force between the original parties at the time it took the assignment, and not to equities accruing thereafter; that, being a remote assignee, it is not affected by equities between the maker and an intermediate indorsee where there could have been no defense to the action against the original payee, and inquires: 'Does a nonnegotiable chose in action in Nebraska gather defenses as it rolls along, and must the next holder investigate the transaction between the payor and every intermediate indorsee?' Whatever the rule may be in other jurisdictions, we think this court has already determined that as a general rule it does. In *Henefin v. Live Stock Nat. Bank,* 116 Neb. 331, where the question of right of an assignee of a chose in action was involved, the court expressly held: 'Ordinarily, an assignee of a chose in action acquires no greater right than was possessed by his assignor, but simply stands in the shoes of the latter.' We see no reason for declaring a different rule, and under the facts and circumstances here presented have no hesitancy in holding that the plaintiff, by

its several assignments, took no greater right than that possessed by the Pierce State Bank and simply stands in its shoes. Where no rule of expediency or necessity controls, such as prompts some of the arbitrary rules pertaining to negotiable instruments, an assignee takes no greater or better right than his assignor. The supreme court of Illinois announces the same rule in *Commercial Nat. Bank v. Burch,* 141 Ill. 519, and in the course of the opinion say: 'Each successive assignee of a chose in action takes it subject to the equities existing between the original assignor and his immediate assignee.'"

What were the rights of the Beemer State Bank under which plaintiff claims? If, under the circumstances, the defendant could have asserted an offset against that bank, then it follows that plaintiff is subjected to the same right and stands in the shoes of the Beemer State Bank. This court suggests further that, if the plaintiff stands in the shoes of the Beemer State Bank, legally defendant Beemer State Bank could never have purchased or taken title to the warrants, as it would be against public policy and in violation of law, and plaintiff, assignee or transferee of the Beemer State Bank could obtain no title to the warrants. Comp. St. 1929, sec. 17-517; *People's Savings Bank v. Big Rock S. & C. Co.,* 81 Ark. 599; *James v. City of Hamburg,* 174 Ia. 301; *City of Bristol v. Dominion Nat. Bank,* 153 Va. 71; *Grand Island Gas Co. v. West,* 28 Neb. 852.

Under the circumstances in this case, the knowledge of both Wupper, president of the bank, and J. S. Severa, cashier of the bank, which they had regarding the entire transaction should be imputed to the Beemer State Bank. *Brownell v. Ruwe,* 117 Neb. 407; *State v. American State Bank,* 108 Neb. 92; *Emerado Farmers Elevator Co. v. Farmers Bank,* 20 N. Dak. 270.

The entire management and control of the Beemer State Bank and its transactions, so far as the matters involved in this litigation go, were in the hands of the president and cashier thereof. While occupying the positions

of mayor and village clerk of defendant, they placed in the hands of the bank the funds belonging to the village of Beemer. The Beemer State Bank, by receiving such deposits with knowledge that they belonged to the defendant, they having never given notice to the defendant that the warrants were then in the hands of this plaintiff, such bank held it as trustee for the defendant village. *State v. Midland State Bank*, 52 Neb. 1.

It is established beyond doubt that defendant, in the issuance of the warrants in question, intended that they should be paid from the funds deposited in the Beemer State Bank, and that defendant believed at all times that the warrants were then held by the Beemer State Bank and would be paid with those funds. The purchase of such warrants by the plaintiff was not intended to and did not benefit the defendant but was intended to and did benefit the bank.

There is no doubt that, had the Beemer State Bank brought suit on these claims, the defendant could have insisted that it apply the trust funds then in the bank's hands and belonging to the defendant towards the satisfaction of such debt.

Under the law and the equities of this case, the relief granted to the defendant by the trial court was correct, and the judgment is

AFFIRMED.