STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. BANK OF OTOE, E. H. LUIKART, RECEIVER, APPELLANT: VILLAGE OF OTOE, INTERVENER, APPELLEE.

FILED OCTOBER 11, 1933. No. 28596.

*F. C. Radke, Barlow Nye, Edwin Moran* and *G. E. Price,* for appellant.

*W. W. Wilson* and *Allen Wilson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and SHEPHERD, District Judge.

GOSS, C. J.

In the proceeding in the district court for Otoe county to wind up the affairs of the Bank of Otoe, an insolvent state bank, the Village of Otoe, intervener and claimant, petitioned for an allowance of two claims, totaling $7,-707.94 and interest thereon from the respective dates of the conversion alleged, as preferred claims arising out of their trust character. After a trial of the issues the court, on May 31, 1932, allowed the claims with interest, then totaling $8,821.43, as a preferred lien on all the assets of the bank in the hands of the receiver and provided that the judgment should bear 7 per cent. interest until paid. The receiver appealed.

The Bank of Otoe closed its doors October 13, 1931. The department of trade and commerce took possession of its property, and E. H. Luikart was appointed receiver on December 26, 1931.

S. H. Buck was the president and managing officer of

the bank and was also treasurer of the village of Otoe at all times mentioned herein. A. R. Buck was cashier of the bank and village clerk. The village owned its own pole-line and distributing system for electric light current, for which at the time of construction it incurred a bonded debt of $8,000. This had been reduced to $6,000, held by the Nebraska City Building & Loan Association. In February or early March of 1930 an informal mass meeting was held in the village to appraise the sentiment of the taxpayers on the question of selling the electric system to pay the bonded debt against it and so much as possible of a $2,000 bonded debt of the village water system. Thereafter the electric system was sold and conveyed by the village to Central Power Company for $7,000. On March 24, 1930, the check of the power company, payable to the village treasurer, was deposited by S. H. Buck, village treasurer, in the Bank of Otoe and was duly paid by the bank on which it was drawn. Thereupon Buck told Naffziger, chairman of the village board, he had received the money from the sale of the lighting system. He expressed a desire that the village board leave it with the bank, stating that the bank would pay 4 per cent. interest on the money. Mr. Naffziger rejected the offer, saying: "We disposed of the pole-line to retire the bonds and we expect them paid." The Bank of Otoe had never applied, as contemplated by section 17-515, Comp. St. 1929, for the privilege of keeping the money of the village, nor had the village board taken any action authorizing its treasurer to use the Bank of Otoe as a depository of its funds. The treasurer on his own motion kept the village funds in that bank. On April 18, 1930, S. A. Naffziger, chairman, and A. R. Buck, clerk, of the village, drew a warrant for $6,237.50, directing the village treasurer to pay that amount to the Nebraska City Building & Loan Association in payment of the $6,000 of bonds and accrued interest thereon held by that institution. On July 15, 1930, having sufficient balance in the hands of the treasurer, the same village

officers drew another warrant for $2,041.67, directing the village treasurer to pay that amount on account of water bonds held by the state of Nebraska. S. H. Buck caused the two warrants to be stamped as paid. As president of the bank he drew a cashier's check for $6,237.50, in favor of the Nebraska City Building & Loan Association, and another for $2,000, in favor of the state of Nebraska. Neither check nor its proceeds was ever delivered to the payees in discharge of the light and water bonds, but in 1931, after the board discovered the bonds had not been paid and pressed him, Mr. Buck paid $1,000 of the water bonds and probably paid $237.50 interest on the light bonds. He testified that the village money augmented the assets of the bank and remained in the bank or was used by the bank. The cashier's checks were used to transfer the credit from his account as village treasurer to some other account, but the light bonds were not paid in full as contemplated, nor was any payment made on the water bonds held by the state of Nebraska. After the warrants of the village were delivered to Mr. Buck to pay off the light and water bonds in 1930, S. A. Naffziger, chairman of the village board, was told by Mr. Buck that the bonds had been paid and that they were in the vaults of the bank. Buck's annual report as village treasurer for the year ending April 29, 1930, showed in the light fund the receipt of $7,000 for the sale of the light plant and an expenditure of $6,887.50 for "bonds and interest." It is not just clear in what form the bank kept the money in the intervening time, but on January 6, 1931, a deposit slip in evidence and Mr. Buck's testimony show that $8,000 of the village money was placed in a Village Treasurer Bond Account. This was a device by Mr. Buck, as manager of the bank, to keep in the bank the village funds in his hands as treasurer. Mr. Naffziger did not learn until February, 1931, that the bonds had not been paid. Thereafter the treasurer was frequently pressed for their payment. They were never paid except as to the extent above recited. When the bank closed it

held as funds of the village the amounts claimed by the village as principal. The foregoing facts are clearly established by the evidence. They are almost undisputed. Appellant states in his brief that the evidence shows conclusively that each member of the village board knew that the funds in the hands of the treasurer were deposited in this bank. He does not cite such evidence, nor do we find it. On the contrary, Mr. Naffziger and Mr. Meyer, board members, testified they did not know until 1931 that the treasurer kept the village funds in the bank.

The question is whether this fund is a trust fund in the hands of the bank and therefore a preferred claim.

Appellant argues that the statute required the treasurer, in the state of facts presented, to keep the village money in the bank. He relies upon the provisions of section 17-515, Comp. St. 1929, the pertinent parts of which follow:

"The treasurer shall be required to keep at all times on deposit for safe-keeping in the state or national bank doing business in the city or village, and of approved and responsible standing, the amount of moneys in his hands collected and held by him as such city or village treasurer. Any such banks located in the city or village may apply for the privilege of keeping such moneys upon the following condition: * * * It shall be the duty of the city council or board of trustees to act on such application or applications of any and all banks, state or national, as may ask for the privilege of becoming the depository of such moneys, as well as to require from all banks other than state banks a bond in such penal sum as may be the maximum amount on deposit at any one time and approve the bonds of those selected as such depository, and the city or village treasurer shall not deposit such moneys or any part thereof in any bank or banks other than such as may have been so selected by the city council or board of trustees for such purposes, if any bank or banks have been so selected by the city council or board of trustees."

In the recent case of *Massachusetts Bonding & Ins. Co. v. Steele, ante,* p. 7, we considered almost identical provisions of section 77-2508, Comp. St. 1929, save that it applied to a county treasurer instead of a treasurer of a city of the second class or village. We there held: "A county treasurer is not authorized to deposit county funds in any bank when it has not been duly designated as a depository and given bond, as such, and then only to the extent provided by statute"—citing *Shambaugh v. City Bank of Elm Creek,* 118 Neb. 817. While it is true that section 77-2508, Comp. St. 1929, required all banks receiving deposits of a county treasurer to give bonds for the safe-keeping and payment of such deposits and here the statute did not then require a state bank thus to indemnify a village, yet otherwise the analogy is complete. And in *Dovey v. State,* 116 Neb. 533, we affirmed a conviction of a bank officer, prosecuted under what is now section 77-2508, who received a deposit of a county treasurer without furnishing a bond to protect such deposit.

Appellant argues that section 17-515, Comp. St. 1929, made the banking department the authority to decide whether a state bank is of "approved and responsible standing," and required the treasurer to deposit the money in a bank if no bank had been selected by the village board. We are of the opinion that a fair interpretation of the language of the whole statute makes it the duty of the village board to pass upon all applications of eligible banks to become depositories and to decide whether or not to approve the responsibility and standing of such applicants; but, if no bank make such application and no bank is selected by the board, the village treasurer cannot bind the board by his own act in selecting and using a bank without the participation or knowledge of the board.

Whatever S. H. Buck knew the bank knew.

"Knowledge of the president and managing officer of a bank will be imputed to such bank, where such officer is

acting for and in the interest of his bank." *Nebraska State Bank v. School District*, 122 Neb. 483.

"Knowledge of active managing officer of the bank will be imputed to the bank, where, as in this case, said officer handled the transaction for the bank, although he acquired his information as treasurer of the school district." *Lincoln Nat. Bank & Trust Co. v. School District*, 124 Neb. 538 (citing cases).

Under prior law it was held that a bank receiving a general deposit from a treasurer of a school district becomes a trustee of the district. *State v. Midland State Bank*, 52 Neb. 1. We have so held recently. *Nebraska State Bank v. School District*, 122 Neb. 483; *Lincoln Nat. Bank & Trust Co. v. School District*, 124 Neb. 538.

In *Union Nat. Bank v. Village of Beemer*, 123 Neb. 778, it was held that, in the absence of actual notice or knowledge on the part of a village, knowledge of the president and cashier of a bank who are also mayor and village clerk will be imputed to such bank when such officers are acting for and in the interests of themselves and the bank; and that "A bank receiving a deposit of funds of a village, the mayor and village clerk of such village then being the president and cashier of such bank, holds such funds as trustee for the village."

The funds being deposited by S. H. Buck, village treasurer, in the bank of which he was cashier, without authority or knowledge of the village board; the treasurer being directed, by warrants drawn by the chairman and by A. R. Buck, clerk of the village board, the latter being also cashier of the bank, to pay the bonds, but failing so to do and acting therein solely in the interests of the bank; it follows on principle and authority that the bank was trustee for the village and its assets are chargeable with a preferred claim of the village for the funds so held.

In the circumstances it is the settled rule that it was the duty of the bank and now is the duty of the receiver to restore the trust fund to the village. The fund was

unlawfully converted by the bank as trustee and illegally mingled with a mass of bank assets into which the trust fund has been traced. It is not required that the particular fund should be further traced or identified. Equity charges the mass of assets and restores the trust fund as a preferred claim payable in full from the general assets, if sufficient. *State v. Farmers State Bank,* 121 Neb. 532; *State v. State Bank of Touhy,* 122 Neb. 582.

The judgment of the district court is

AFFIRMED.

GOOD and EBERLY, JJ., concur in the result.