STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. BANK OF OTOE, E. H. LUIKART, RECEIVER, APPELLANT: SCHOOL DISTRICT NO. 78, OTOE COUNTY, INTERVENER, APPELLEE.

FILED OCTOBER 20, 1933. No. 28608.

F. C. Radke, Barlow Nye, G. E. Price and Edwin Moran, for appellant.

I. D. Beynon, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and SHEPHERD, District Judge.

GOSS, C. J.

The Bank of Otoe closed its doors October 13, 1931, with total resources of $182,332.62. The department of trade and commerce took possession of its property. It was duly adjudged insolvent and E. H. Luikart, secretary of the department, was appointed receiver on December 26, 1931. School District No. 78 of Otoe county, Nebraska, intervened and petitioned for the allowance of its claim for alleged trust deposits, amounting to $2,275.04, on hand when the bank closed. Upon joinder of issues and trial the district court allowed the claim as a trust fund in preference of claims of general depositors. The receiver appealed.

S. H. Buck was treasurer of the school district and was also president and managing officer of the bank at all times mentioned herein. The evidence shows that he

deposited the funds of the school district in the bank but that the bank had never applied for the privilege of keeping such moneys nor had the governing body of such school district approved or designated such bank as a depository.

The 1931 legislature passed, with an emergency clause, a new act complete in itself, providing for the deposit of school district and township money in banks. It was approved and became effective on March 25, 1931. Laws 1931, ch. 141; Comp. St. Supp. 1931, secs. 77-2525, 77-2526, 77-2527; Comp. St. Supp. 1933, same numbers. The pertinent sections read as follows:

"Section 1. That any school district treasurer or township treasurer may deposit the money received or held by him by virtue of his office in some state or national bank situated in such school district or township or in some nearby city or village which has been approved as such depository by the governing body of such school district or township.

"Section 2. Any such bank may apply for the privilege of keeping such moneys. All such deposits shall be subject to payment on check when demanded by the district or township treasurer. It shall be the duty of the school district board or township board to act upon such application.

"Section 3. No such treasurer shall be liable on his bond for money on deposit in a bank under and by direction of the proper legal authority."

At the annual meeting of the board in June, 1931, the balance on hand reported by the treasurer agreed with the balance shown by the ledger kept by the secretary but, when the bank closed, its individual ledger account showed that it held a balance of $1,386.18 in the account of Buck as treasurer of the school district. The evidence shows, however, on the bank account, that he had drawn and the bank had paid four checks, totaling $894, which were not recorded by him in his accounts as school treasurer nor reported by him to the school board or to

its secretary. No warrant or order directed the treasurer to pay out the money indicated by the checks. These amounts were checked out of the bank account of the treasurer for cash or otherwise in favor of S. H. Buck personally. Whether he appropriated the money to his own use or for the use of the bank is not disclosed. He was a witness for the receiver but was not questioned on this subject. His books show a charge of $5.14 not appearing on the secretary's ledger which is not contested by intervener. Giving him that credit and charging him with the $1,386.18 balance in the bank and with the $894 converted by means of the checks, the intervener derives the $2,275.04, which was allowed by the trial court. The evidence amply showed that the treasurer owed that sum to the school district and, but for his conversion of the amount above described, would have had in the bank the amount claimed.

Section 79-405, Comp. St. 1929, makes it the duty of the treasurer of a school district to pay over upon order of the director, countersigned by the moderator, all moneys received by the treasurer. Section 79-2008, Comp. St. 1929, forbids a school treasurer to lend or use any part of school moneys under the penalties provided by the statutes regarding embezzlement. These sections were not repealed, modified, nor referred to in the 1931 act hereinbefore quoted. This act of 1931 shows an intent on the part of the legislature to place a school district treasurer under the same restrictions as county treasurers and treasurers of cities of the second class and villages by making it unlawful for any such treasurer to deposit funds in a bank unless authorized so to do in the manner provided by statute. For example in recent cases: Considering section 77-2506, Comp. St. 1929, we held that a county treasurer is not authorized to deposit county funds in a bank not duly designated as a depository. *Massachusetts Bonding & Ins. Co. v. Steele, ante,* p. 7. And, considering almost identical provisions of section 17-515, Comp. St. 1929, relating to treasurers of

cities of the second class and villages, we have held this term, in a case involving this same Bank of Otoe and S. H. Buck as treasurer of the village of Otoe, that a state bank, not designated by or known to the trustees as a depository but receiving deposits of the funds of a village, the village treasurer being the president and managing officer of the bank, holds such funds as trustee for the village. *State v. Bank of Otoe, ante,* p. 383. To avoid unnecessary repetition, we refer to the arguments and cases cited in these two recent cases, involving the same principles as here.

Appellant pleads and argues that the school district is estopped because the board members knew the treasurer kept the school account in the bank. And he argues that the school district was guilty of laches. He frankly admits that there are no reported decisions that are decisively in point. Without taking the time or space to discuss or analyze the cases cited, we think it very clear they cannot weigh in the balance with the public policy expressed in the statutes relating to treasurers, heretofore quoted. It is contrary to that policy for any governing authority to permit, by acquiescence or connivance, any treasurer to deposit money in any bank, except that bank be approved and designated in the manner provided by statute. In *Shambaugh v. City Bank of Elm Creek,* 118 Neb. 817, it was held: "A county treasurer's sole authority for the deposit of public moneys in banks is to be found in sections 6191-6196, Comp. St. 1922, and the directions, limitations and public policy evidenced thereby must be complied with by such officer and all who deal with him with reference to such public funds." This authority might be paraphrased to apply to a school district treasurer under the statutes applicable to him.

What S. H. Buck knew the bank knew. Both he and his bank were charged with knowledge that he had no right to put school district money in an undesignated bank. When he checked out the $894 of the school money and converted it he and his bank knew he was appropriat-

ing it. "Knowledge of active managing officer of the bank will be imputed to the bank, where, as in this case, said officer handled the transaction for the bank, although he acquired the information as treasurer of the school district." *Lincoln Nat. Bank & Trust Co. v. School District,* 124 Neb. 538. In that case it was further held: "Bank receiving deposit of funds of school district treasurer, who is also active managing officer of the bank, holds such funds as trustee." The Bank of Otoe, holding the funds in trust, should not have permitted Buck to use any portion of the funds and is held as trustee for all the funds not paid out on the orders of the school board.

The judgment of the district court is

AFFIRMED.