STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. DWIGHT STATE BANK, E. H. LUIKART, RECEIVER, APPELLANT: PLUM CREEK TOWNSHIP, INTERVENER, APPELLEE.*

FILED MARCH 9, 1934. No. 28674.

* On rehearing, paragraphs 1 and 2 of syllabus withdrawn. See opinion, p. 884, *post*.

F. C. *Radke, Barlow Nye, G. E. Price* and *Phillip A. Tomek,* for appellant.

*Coufal & Shaw* and *Ray E. Sabata, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and CHASE and ELDRED, District Judges.

CHASE, District Judge.

This is a suit in equity by which the intervener, Plum Creek Township, seeks to have its claim in the receivership of the Dwight State Bank declared a preferred claim by reason of an alleged trust relationship between the bank and the intervener.

On September 4, 1931, the Dwight State Bank was judicially declared to be insolvent and E. H. Luikart, secretary of the department of trade and commerce, was appointed receiver over the assets of the defunct corporation. In the receivership proceedings Plum Creek Town-

ship intervened, and by its petition it seeks to have the general assets of the bank in the hands of the receiver impressed with a trust in its favor for the sum of $855.59. A trial was had upon the issues presented by the petition of intervention, and the court found that the Dwight State Bank was a trustee for the intervener and allowed the intervener's claim in full. From such finding the receiver has prosecuted an appeal to this court.

The facts are not seriously in dispute. It appears that, for a number of years prior to the closing of the bank, Plum Creek Township had used this bank as its depository for its public funds. In January, 1931, one Prochaska assumed the duties of treasurer of the township, at which time he settled with the outgoing treasurer and had a balance in the bank to the credit of the township in the sum of $2.70. On January 21, 1931, the treasurer deposited with the Dwight State Bank the sum of $802.70, and on May 14 and June 13 of the same year he deposited $2,500 and $1,150, respectively. Checks were honored against this deposit from time to time, and when the bank closed there was left in the account to the credit of Plum Creek Township the sum of $855.59. When Prochaska became treasurer, one Novak, who was then president of the bank, called upon the treasurer and requested him to continue depositing the funds of the township in the bank. The treasurer followed the practice of the former treasurer and carried his official account there until the bank was finally closed. It also appears that no affirmative application was ever made by the Dwight State Bank to the governing body of the township for the privilege of keeping the township moneys on deposit in the bank, nor was there any affirmative action taken on the part of the governing body of the township approving the Dwight State Bank as a depository for its funds.

A determination of the question presented by the pleadings necessitates a construction of the recent enactments of the legislature on the subject of depositories for public funds.

Section 77-2525, Comp. St. Supp. 1931, provides: "That any school district treasurer or township treasurer may deposit the money received or held by him by virtue of his office in some state or national bank situated in such school district or township or in some nearby city or village which has been approved as such depository by the governing body of such school district or township."

Section 77-2526, Comp. St. Supp. 1931, provides: "Any such bank may apply for the privilege of keeping such moneys. All such deposits shall be subject to payment on check when demanded by the district or township treasurer. It shall be the duty of the school district board or township board to act upon such application."

Section 77-2527, Comp. St. Supp. 1931, provides: "No such treasurer shall be liable on his bond for money on deposit in a bank and by direction of the proper legal authority."

The receiver argues that no formal application is necessary on the part of the bank, and no formal designation as a depository on the part of the governing body of the township is necessary under the law, where the depository knows the public character of the funds and the governing body of the political subdivision knows that the funds have been and are still being deposited in the bank; that such acquiescence and ratification, as a matter of law, are equivalent to a formal application and designation.

In applying the usual canons of statutory construction to the act, we do not believe that the receiver's interpretation is well-founded. The legislative intent is quite clearly expressed by the language it employs. This language is not susceptible of a dual meaning. By the plain wording of the statute, the governing body of such a political subdivision as the intervener must approve the depository. The approval contemplated by the statute requires some positive or affirmative action on the part of the governing body from which the intent to designate is manifest. Mere silence on the part of the governing

body or each individual member thereof, with knowledge of the facts, is not such an approval as is contemplated by the statute. The approval necessary under the statute must result from positive action on the part of the board, and not from mere inaction. If the failure of the board to act could be clothed with any legal significance, it would be more in the nature of a disapproval than an approval, since it is negative in effect. The account of the intervener was solicited by the bank officers and carried in the bank in the name of Plum Creek Township, and the corporation knew at all times that these funds belonged to the intervener.

It is argued on behalf of the receiver that to hold the bank as an insurer of these funds, when it made no application therefor, is too unjust to receive equitable sanction. If any injustice flows from such a situation, it is brought about by the bank itself. If the bank desired to avoid liability under the statute, it had the privilege of refusing to receive the funds. This it did not choose to do; therefore, it must accept the liability which it assumed by voluntarily accepting the funds.

Under the theory of trustee and beneficiary which the intervener seeks to apply to this situation, the depository never acquires title to the money, but merely holds it as an equitable bailee with an obligation to return upon demand. The relationship is not one of debtor and creditor as grows out of an ordinary deposit. The rule adopted by this court in recent cases is to the effect that, where a bank receives money under circumstances of which it could not become a legal depository, the law will impress the funds thus received with a trust in favor of the owner of the fund. The bank treated these funds as an ordinary deposit, mingled the same with the general assets of the bank, and $855.59 thereof it had on hand to the credit of the intervener when it was closed. In the recent case of *State v. Bank of Otoe*, 250 N. W. 547 (125 Neb. 414), which we take to be controlling in this case, the court

laid down the following rule: "Bank, not designated as depository, receiving deposit of funds from school district treasurer, who was also active managing officer of bank, held funds as trustee, entitling school district to preference on bank's insolvency." While the above case has special reference to school districts, townships are included in the same section of the statute.

It is also argued by the receiver that it became the duty of the township board to act upon the bank's application for the deposit of funds. We find nothing in the record indicating that the bank ever applied to the governing body of the township for the privilege of keeping its funds. The only place the record hints of such a fact is where the president, Novak, asked the treasurer to keep the money in his bank. We cannot feel justified in holding the township guilty of such dereliction of duty in failing to act upon an application when no such application was ever made.

The receiver further argues that the intervener has not sufficiently traced the funds entitling it to impress the assets of the bank with a trust. The ancient equitable doctrine requiring the tracing of trust funds has been somewhat relaxed by our recent decisions. In *State v. Farmers State Bank,* 121 Neb. 532, it was held that, where the trust funds were traced into the general assets of the bank, and the assets were augmented as a mass to the extent of the funds received, notwithstanding the identical money was mingled with other corporate funds, the funds were traced sufficiently to impress the general assets with a trust, and the amount of the funds so mingled was an asset belonging to the intervener and never became an asset of the bank.

Applying the doctrine to the instant case the judgment is

AFFIRMED.