STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. FIDELITY STATE BANK, E. H. LUIKART, RECEIVER, APPELLEE: CITY OF AURORA, INTERVENER, APPELLANT.

FILED JULY 6, 1934. No. 29139.

*Craft, Edgerton & Fraizer*, for appellant.

*F. ·C. Radke* and *Barlow Nye*, contra.

Heard before ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LESLIE and RYAN, District Judges.

LESLIE, District Judge.

This is an appeal to this court from a judgment of the district court for Hamilton county, in a proceeding brought by the city of Aurora, as intervener, against E. H. Luikart, receiver of the Fidelity State Bank of Aurora.

The intervener claims that at the time of the appointment of the receiver it had on deposit in the bank $29,357.36, that certain assets belonging to the bank had been pledged to the city as security for this deposit, and that after the appointment of a receiver these assets so pledged were sold and application of the proceeds made upon the indebtedness, reducing it to $12,601.52.

The intervener further alleges that of the $29,357.36, total deposit of the city in the bank at the time of the appointment of the receiver, $14,267.59 belonged to what is known as a "Cemetery Investment Fund," collected and held by the city as a trust fund to be invested according to a regulation provided for by ordinance, and intervener asks for judgment directing the receiver to treat the balance of the bank's indebtedness to the city as a preferred claim, having priority over claims of depositors.

The receiver admits that the intervener, city of Aurora, had on deposit in the bank when it went into liquidation and a receiver was appointed, $29,357.36, and that certain securities, assets of the bank, had been pledged to the city as security for its deposit, and that the assets so pledged had been disposed of by intervener and application of the proceeds made upon the indebtedness. The receiver denies that any part of the deposit is or was a trust fund, and alleges that following the adjudication of insolvency of the bank and appointment of a receiver he brought an action to recover from the city the assets which had been pledged to it by the bank, claiming that it had no authority to pledge its assets to secure the city's deposits; that in said action, on appeal to the supreme court, it was determined that the bank could legally pledge its assets to secure the deposit of the city, and that the city having made application of the securities pledged upon its claim, and the

receiver having classified the balance of the claim as a general claim only, the intervener is "one otherwise secured" and estopped to prove a claim other than for a secured deposit. *Luikart v. City of Aurora*, 125 Neb. 263.

The trial court by·its decree found that the bank was a duly designated depository for funds of the city of Aurora, and that at the time of the appointment of a receiver the city had a deposit in general checking account and time certificates of $29,357.36; that by agreement between the bank and the city certain securities aggregating in value $23,000 were pledged by the bank to the city as security for the repayment of deposits; that subsequently the pledged assets were liquidated and the proceeds applied in reduction of intervener's claim, and the balance of said claim allowed, payable from the assets remaining after payment of the claims of general unsecured depositors.

Intervener urges that the city's deposits are trust funds: First, because the city and bank officials were identical; second, that the city failed to invest the Cemetery Investment Fund according to its ordinance; and, third, that the bank failed to furnish a depository bond.

In support of its first contention a number of Nebraska cases are cited. The first one is *State v. Farmers State Bank*, 121 Neb. 532. In this case the bank had converted to . its own use the proceeds of a promissory note for $4,500, which should have been applied on a debt of one Edward A. Lindquist. The court held that the bank, by reason of its unlawful conversion of the money, became a trustee of that fund for the owner.

The second case is *Union Nat. Bank v. Village of Beemer*, 123 Neb. 778. In this case Wupper, as mayor and bank president, and Severa, as village clerk and bank cashier, sold certain irregularly issued warrants on a sewer construction project to the Union National Bank without notice to the village treasurer of their action. Later the village treasurer deposited funds of the village to pay these warrants. The bank did not apply it to the payment of the warrants, nor make known that they were not in its possession.

The third case, *Nebraska State Bank v. School District,* 122 Neb. 483, concerns a transaction wherein irregularly issued warrants of a school district were sold by the Pierce State Bank to the Nebraska State Bank of Norfolk, one Frank Pilger being both managing officer of the bank and treasurer of the school district. The warrants were bought by the bank from its own funds while there were ample funds on deposit to the credit of the school district in that bank. The bank recouped itself by selling the warrants to the State Bank of Norfolk, and kept the deposit of the school district to use in its own business. The bank profited by a fraud of its officer.

The fourth case, *Lincoln Nat. Bank & Trust Co. v. School District,* 124 Neb. 538, presents a state of facts almost identical with those in the preceding case. One Studley, school treasurer and bank officer, manipulated school warrants and deposits so that the bank retained and used the deposit which should have been applied to the payment of the warrants.

The fifth case, *State v. Bank of Otoe,* 125 Neb. 414, concerns the deposit of school funds in a bank not designated by the school board as a depository.

In the sixth case, *State v. Bank of Otoe,* 125 Neb. 383, the court made an identical decision with that in the school district case in regard to village funds deposited in a bank not properly designated.

The seventh case, *City of South Sioux City v. Mullins,* 125 Neb. 410, holds that a treasurer of a city of the second class is not authorized to deposit public funds in an undesignated bank.

Obviously the law applicable to the facts in the foregoing cases has no application in the instant case. The facts in those cases upon which the court held the funds in the bank to be trust funds are not present in the case under consideration. In the instant case the bank was designated as a depository, and pledged its assets as security for the repayment of the deposits. No charge of actual or constructive fraud is contended for by intervener.

It might be inferred from reading the third section of the syllabus in *Union Nat. Bank v. Village of Beemer, supra,* that this court held in that case that, because the president and cashier of the bank were also mayor and village clerk, deposits of the village were held by the bank as trust funds. This section of the syllabus incorrectly states the law as announced in the opinion. The court found that certain warrants issued by the village were in the possession of the bank; that it disposed of these warrants without notice to the village; that the treasurer subsequently deposited funds of the village with the bank for the purpose of paying the warrants; that the bank did not apply the money to that purpose nor make known to the village that it had disposed of the warrants. The bank having retained the proceeds from sale of the warrants and also the deposit, the court held that the bank, through its officers who were also officers of the village, was charged with knowledge of the purpose for which the funds had been deposited by the village, and that the bank held the money in trust for the village.

Intervener's second contention is that the Cemetery Investment Fund is a trust fund for the further reason that the city treasurer failed to invest the money according to the provisions of an ordinance of the city. The ordinance is as follows:

"Perpetual Care and Repair. The owner of any lot or lots in the cemetery shall, upon the payment of the sum of fifty ($50) dollars for each and every lot owned by him or them, be entitled to perpetual care of his or their lot, and for one-half (½) lot, the sum so paid shall be thirty ($30) dollars. All money received for the above purposes shall be kept separate and apart from all other funds and shall be known as the 'Cemetery Investment Fund.' Said fund shall be invested in real estate mortgages, city and county bonds and warrants, and in such other securities as the state law permits the state school funds to be invested in. The interest derived from such funds shall be used to pay the expenses of the care and repair of the lots owned by the parties contributing same."

The money paid to the city under provisions of this ordinance by lot owners was for an express purpose, to wit, perpetual care of lots. That the city could not lawfully appropriate it to any other purpose than that for which it was paid to the city may be conceded. It does not follow from this, however, that the city could not legally deposit the fund in a bank designated by the city as a depository for city funds.

The ordinance does not purport to say that money in the city treasury belonging to the Cemetery Investment Fund awaiting investment may not be deposited by the treasurer in the bank designated by the city as its depository. It merely designates the class of securities in which the fund shall ultimately be invested. An ordinance prohibiting the city from depositing any of its funds in the bank designated as a depository would be in contravention of section 17-515, Comp. St. Supp. 1931, which provides:

"The treasurer shall be required to keep at all times on deposit for safe-keeping in the state or national bank doing business in the city or village, and of approved and responsible standing, the amount of moneys in his hands collected and held by him as such city or village treasurer."

The amount paid by lot owners to the city was as much a part of the city's funds, although restricted to a certain use, as any other funds coming into the possession of the city treasurer.

Intervener's third proposition that the deposits of the city were held by the bank in trust for the city because of the failure of the bank to furnish a depository bond is disposed of by the holding of this court in the case of *Luikart v. City of Aurora,* 125 Neb. 263, wherein it was adjudicated that a state bank designated as a depository of funds belonging to a city of the second class may by contract legally pledge its assets in lieu of a bond as security for the deposits, and that such contract is binding on the parties thereto.

Holding, as we have, that the money in the bank be-

longing to the city was legally deposited, that no part of it was a trust fund, and the bank having pledged certain of its assets to the city, in lieu of a bond, to secure repayment of the deposit, it follows that the judgment of the district court should be and is

AFFIRMED.